DECISION
{¶ 1} Relator, Tri County Business Services, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting a one-half loss of the left thumb by amputation under R.C. 4123.57(B) to respondent, Justin Croley ("claimant"), and ordering the commission to find that claimant is not entitled to that benefit.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, the court referred this matter to a magistrate of the court. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court grant the requested writ. (Attached as Appendix A.) No objections to that decision have been filed.
 {¶ 3} Finding no error of law or other defect on the face of the magistrate's decision, and based upon an independent review of the evidence, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ of mandamus is granted ordering the commission to vacate its order granting claimant a one-half loss of thumb award and to issue a new order finding that claimant is not entitled to that additional benefit.
Writ of mandamus granted.
Bryant and Travis, JJ., concur.
 APPENDIXA IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Tri County Business :
Services, Inc., :
 Relator, :
v. : No. 05AP-95
 :
Justin Croley and : (REGULAR CALENDAR)
Industrial Commission of Ohio, :
Respondents. :
 MAGISTRATE'S DECISION
Rendered on August 25, 2005
Dinsmore Shohl LLP, J.L. Sallee, Jr., and Peter J. Georgiton, for relator.
Gregory W. Bellman, for respondent Justin Croley.
Jim Petro, Attorney General, and Andrew J. Alatis, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 4} Relator, Tri County Business Services, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order granting a one-half loss of the left thumb by amputation under R.C. 4123.57(B) to respondent Justin Croley ("claimant") and ordering the commission to find that claimant is not entitled to that additional benefit.
Findings of Fact:
 {¶ 5} 1. Claimant sustained a work-related injury on September 21, 2003, and his claim has been allowed for: "avulsion of the fleshy tip of left thumb; amputation of lateral bony tuft of the distal phalanx left thumb."
 {¶ 6} 2. On June 14, 2004, claimant filed a motion seeking a scheduled-loss award. According to his motion, claimant attached the operative records which provide, in pertinent part, as follows:
BRIEF CLINICAL HISTORY: The patient had an avulsive injury of his thumb earlier this week. The wound was cleaned with no other injuries. After an explanation of the risks, benefits, and alternatives, he agreed to closure by volar advancement.
DETAILS OF THE PROCEDURE: * * * The volar flap was mobilized[.] * * * The IP joint was flexed. * * * The flap was viable. * * *
 {¶ 7} 3. The following other relevant medical evidence contained in the record is as follows: (1) the September 21, 2003 emergency services record provides:
LEFT HAND EXAMINATION: Reveals that there is a 2 cm area of the distal thumb which is amputated. It is down to bone. It is not actively bleeding.
X-RAY EVALUATION: The patient was sent for an X-ray of his left thumb, three views which I interpreted, that showed tissue loss as well as loss of the radial corner of the distal phalanx.
(2) the September 22, 2003 report of W. John Kitzmiller, M.D., provides, in pertinent part:
On examination he was alert, oriented, pleasant, and cooperative. He had a 1.5 x 1 cm avulsive injury to the pulp of his left thumb tip. The sterile matrix nail appeared to be intact. He had no sign of infection or other injury.
We discussed the options that included allowing the wound to heal by secondary intent and local flap closure. * * *
(3) the September 21, 2003 radiology report which provides, as follows:
FINDINGS: The bony alignment of the left hand is within normal limits. There is a soft tissue defect over the tip of the thumb. There does appear to be a small bony defect along the lateral tuft of the thumb as well.
IMPRESSION: Amputation of the soft tissues of the tip of the thumb as well as a small portion of the lateral thumb tuft.
 {¶ 8} 4. Claimant's motion was heard before a district hearing officer ("DHO") on August 31, 2004, and was denied for the following reasons:
It is the order of the District Hearing Officer that the C-86 motion filed by the injured worker on 06/14/2004 be denied. The C-86 motion requested compensation pursuant to Revised Code 4123.57 for partial amputation of the injured worker's left thumb. The operative report submitted by the injured worker indicated that the injured worker lost the fleshy tip of his left thumb as well as the bony tuft of the distal phalange. Revised Code 4123.57 provides for an award for "the loss of a second, or distal, phalange of the thumb is considered equal to the lost [sic] of one half of such thumb." The District Hearing Officer finds that the medical evidence does not establish that the injured [worker] had lost the distal phalange of the thumb. The medical evidence in file establishes that, although there was some bone involvement, the amputation was located at the tip of the thumb. The District Hearing Officer finds that Revised Code 4123.57 provides compensation when the amputation is near the joint. The injured worker's attorney argued that Revised Code 4123.57 should be interpreted to provide compensation as long as there is any bone involvement. The District Hearing Officer rejects this argument, relying on State ex rel. Kabealo [v.] Indus.Comm. (March 8, 1990), Franklin App. No. 88 Ap-33, unreported (1990 opinions 811).
In that case, the Court of Appeals indicated that the statute should be interpreted to indicate that the loss must be at or near the joint in order to qualify for an award pursuant to Revised [C]ode 4123.57. The District Hearing Officer finds that the lost [sic] in this case involved only the tip of the bone and therefore, does not constitute loss of the distal phalange. The District Hearing Officer orders that the injured worker's request for a scheduled loss award for one half loss of the left thumb be denied.
This order is based upon the operative report in file and the Kabealocase cited above.
 {¶ 9} 5. Claimant appealed and the matter was heard before a staff hearing officer ("SHO") on November 22, 2004. The SHO vacated the prior DHO order with regard to the loss of the thumb and granted the requested compensation as follows:
The Staff Hearing Officer further finds that the injured worker has suffered the ½ loss of his left thumb by amputation. Specifically, the operative report submitted following the injury identifies the loss of the fleshy tip of the left thumb as well as the bony tuft of the distal phalange. The Staff Hearing Officer finds that the amputation of bone constitutes a sufficient loss to qualify for an award of compensation for ½ of the thumb as provided by ORC Section 4123.57(B). Accordingly, the injured worker is awarded the compensation provided for ½ loss of the left thumb.
 {¶ 10} 6. Relator's appeal was refused by order of the commission mailed December 21, 2004.
 {¶ 11} 7. Thereafter, relator filed the instant mandamus action in this court. Conclusions of Law:
 {¶ 12} For the reasons that follow, this magistrate finds that a writ of mandamus is appropriate in this particular case.
 {¶ 13} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that he has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 14} Pursuant to R.C. 4123.57(B), a claimant may be entitled to permanent partial disability benefits for specific scheduled losses due to a work-related injury. R.C. 4123.57(B) provides, in pertinent part, as follows:
In cases included in the following schedule, the compensation payable per week to the employee is the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code per week and shall continue during the periods provided in the following schedule:
For the loss of a thumb, sixty weeks.
* * *
The loss of a second, or distal, phalange of the thumb is considered equal to the loss of one half of such thumb; the loss of more than one half of such thumb is considered equal to the loss of the whole thumb.
 {¶ 15} In the present case, the commission awarded claimant compensation for the loss of one-half of his left thumb based upon the conclusion that "the amputation of bone constitutes a sufficient loss to qualify for an award of compensation for 1/2 of the thumb as provided by ORC Section 4123.57(B)." The magistrate finds that the commission has misstated the law and that, based upon the facts in this case, claimant is not entitled to the award which the commission gave him.
 {¶ 16} The thumb itself arguably consists of four parts: the distal phalanx is that portion of bone furthest from the hand which contains the nail bed; the interphalangeal joint ("IP") which permits the distal phalanx of the thumb to bend; the proximal phalanx is the first bone of the thumb as it leaves the hand; and the metacarpal joint ("MP") which permits opposition of the thumb with the other fingers and is the "key to the thumb's uniqueness and utility." State ex rel. Meissner v. Indus.Comm. (2002), 94 Ohio St.3d 203, 206.
 {¶ 17} In the present case, it is claimant's distal phalanx (the portion of bone furthest from the hand which contains the nail bed) which has been injured. According to the emergency services records, claimant sustained a loss of a 2 centimeter area of his thumb which included the radial corner of his distal phalanx. Pursuant to Dr. Kitzmiller's September 22, 2003 report, claimant's matrix nail is intact. The September 26, 2003 operative notes, signed by Dr. Kitzmiller, specifically indicate that following the surgery claimant's IP joint was flexed. Furthermore, the September 21, 2003 radiology report indicates that claimant sustained an amputation to the soft tissues of the tip of his thumb as well as a small portion of the lateral thumb tuft.
 {¶ 18} The evidence in the record does show that claimant lost a portion of the bone of his distal phalanx. However, the evidence also shows that the amputation did not effect the IP joint of claimant's thumb and that the matrix nail was intact. In State ex rel. Kabealo v. Indus.Comm. (Mar. 8, 1990), Franklin App. No. 88AP-33, the injured worker sought an award for amputation of the distal phalanx of his index finger under former R.C. 4123.57(C). The question centered around whether or not an injured worker can be compensated for loss, by amputation, for partial severance of the distal phalange of a finger. This court found that the injured worker was not entitled to the compensation. This court stated as follows:
With regard to interpretation of R.C. 4123.54(C), our past case law supports the conclusion that loss of the distal phalange means loss near the joint and not a partial loss. In State, ex rel. Glower, v. Indus.Comm. (Sept. 1, 1988), Franklin App. No. 86AP-1026, unreported (1988 Opinions 3129), we analyzed whether a claimant suffered a loss of use of a whole finger where she had suffered a loss of use of her distal and middle phalange, but not her proximal phalange. However, she also suffered ankylosis (stiffness) of the proximal interphalangeal joint. The R.C. 4123.57(C) provision in question stated that "* * * loss of more than the middle and distal phalanges of any finger is considered equal to the loss of the whole finger. * * *" We focused our analysis at the joint, noting that the claimant suffered a loss of use only to the joint. Nonetheless, we held that when the ankylosis of the joint was considered and added, then the claimant had indeed suffered a loss of "more than the middle and distal phalanges," thus entitling the claimant to an award for the whole finger.
Although Glower was a loss of use case, its approach to the statute is controlling herein. Loss of the distal phalange does not mean partial loss. Rather, it means severance near the joint. As evident in Glower,
other scheduled loss-of-member benefit provisions in R.C. 4123.57(C) specifically state the extent to which a loss is compensable. For example, R.C. 4123.57(C) provides:
"The loss of a second, or distal, phalange of the thumb is considered equal to the loss of one half of such thumb; the loss of more than onehalf of such thumb is considered equal to the loss of the whole thumb.
"* * *
"The loss of more than the middle and distal phalanges of any finger is considered equal to the loss of the whole finger. * * *
"* * *
"The loss of more than two-thirds of any toe is considered equal to the loss of the whole toe.
"The loss of less than two-thirds of any toe is considered no loss, except as to the great toe; the loss of the great toe up to the interphalangeal joint is co-equal to the loss of one-half of the great toe; the loss of the great toe beyond the interphalangeal joint is considered equal to the loss of the whole great toe."
If the legislature intended to provide for partial loss of the distal phalange it would have done so. The choice to disallow partial losses like the one relator suffered is arguably reasonable. For unlike a leg, the distal phalange is small and distinctions are hard to draw. Thus, choosing a point near the joint makes administration of the act more effective and efficient. Cf., [State ex rel. Hammond v. Indus. Comm.
(1980), 64 Ohio St.2d 237], at 242.
Accordingly, there is only one reasonable construction here, and that is that loss of the distal phalange means near the joint. This is not a case where there is a totally and ambiguous statute.
Id. (Emphasis sic.)
 {¶ 19} Given this court's interpretation of the statute, the magistrate finds that the commission did abuse its discretion in granting claimant a permanent partial award for the loss of one-half of his thumb where the evidence shows that claimant suffered a partial amputation of the distal phalanx which was not close to the IP joint and where the IP joint itself was able to be flexed.
 {¶ 20} Accordingly, it is the magistrate's decision that relator has demonstrated that the commission abused its discretion in this case and the commission should be ordered to vacate its order granting claimant a one-half loss of thumb award.