{¶ 1} Relator, J.E.S. Foods, Inc., commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order awarding respondent, David Parker ("claimant"), R.C. 4123.57(B) *Page 2 
scheduled — loss compensation for the loss of the third or distal phalanges of two fingers of his left hand, and to enter an order denying said award.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate found that the commission did not follow the proper standard for determining R.C. 4123.57(B) phalange loss. The magistrate also found that there was no medical evidence in the record that could conceivably support phalange loss under the correct legal standard. Therefore, the magistrate has recommended that we grant a writ of mandamus.
 {¶ 3} The claimant filed objections to the magistrate's decision arguing that the magistrate improperly re-weighed the evidence and substituted his judgment for that of the commission when he determined that the bone loss was not sufficiently at or near the joint to warrant a scheduled loss of use award under R.C. 4123.57(B). We agree.
 {¶ 4} The claimant notes that the commission identified the correct legal standard. Specifically, the commission recognized that the bone loss must be near the joint for the amputation to be compensable. What constitutes sufficient proximity to the joint to support an award is a factual issue that the commission must resolve based upon the evidence submitted. Here, the commission noted that Dr. Kemmler clearly indicated that the amputations included bone loss. In addition, more bone was removed during the operative repair. Based upon this evidence, the commission found that there was sufficient evidence to award one-third amputations for the left third and fourth fingers. We agree with the claimant that this constitutes some evidence supporting the commission's decision. *Page 3 
 {¶ 5} The magistrate reached a different conclusion after examining the same evidence. However, it is well-established that the determination of disputed facts is within the final jurisdiction of the commission, subject to correction by action in mandamus only upon a showing of abuse of discretion. Although reasonable fact-finders might reach different conclusions about whether the evidence indicated the amputations were sufficiently near the joint to justify an R.C.4123.57(B) scheduled — loss award, we fail to see how the commission abused its discretion. Dr. Kemmler's description of the degree of bone loss is some evidence supporting the commission's decision. Therefore, we sustain the claimant's objections.
 {¶ 6} Following an independent review of this matter, we find that the magistrate has applied the appropriate law but, improperly re-weighed the evidence in this case. Therefore, we modify the magistrate's decision to the extent indicated herein, and deny relator's request for a writ of mandamus.
Objections sustained; writ of mandamus denied.
 BROWN and FRENCH, JJ., concur. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 7} In this original action, relator, J.E.S. Foods, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding respondent David Parker ("claimant") R.C. 4123.57(B) scheduled-loss compensation for the loss of the third or distal phalanges of two fingers of his left hand and to enter an order denying said award. *Page 5 
 Findings of Fact:
 {¶ 8} 1. On March 9, 2006, claimant sustained injuries to two fingers of his left hand while employed with relator, a state-fund employer. The employer certified the industrial claim which the commission officially recognizes for "amputation tip of left fourth finger; amputation tip of left third finger," under claim number 06-812597.[1]
 {¶ 9} 2. On the "First Report of an Injury, Occupational Disease or Death" form, claimant indicates "cut tips of middle [and] third finger of left hand."
 {¶ 10} 3. On the date of injury, claimant was examined by James E. Kemmler, M.D., who wrote:
 The patient is a 19-year-old male who suffered an injury this afternoon to the left 3rd and 4th digits while at work. He works at a food processing center and suffered injuries to his 3rd and 4th distal phalanges with a meat cutter. He was seen in the emergency room, where initial evaluation was performed. * * *
 * * * Examination of the hand reveals amputations through the distal nail and distal phalanx regions of the 3rd and 4th digits. There is exposed bone. These are guillotined-type injuries. These appear clean.
 Assessment: Amputations through distal aspect, distal phalanges, with exposed bone, left 3rd and 4th digits.
 Plan: The patient will necessitate further debridement and grafting. We will take the graft from the forearm. He wishes to undergo this procedure with general anesthetic. * * * *Page 6 
 {¶ 11} 4. On March 10, 2006, the day following the injury, claimant underwent surgery performed by Dr. Kemmler. Dr. Kemmler's operative report of March 10, 2006 states:
 PREOPERATIVE DIAGNOSIS: Distal tip amputation of the left third and fourth digits.
 * * *
 OPERATIVE PROCEDURE: Full thickness skin grafting from left forearm to left third and fourth digits.
 * * *
 * * * The amputation areas were cleansed. There was exposed bone on both areas. The amputations were revised, performing neurectomies and revising these back to a nice flat surface including bone, skin and subcutaneous tissue, as well as nailbeds. Approximately 1-2 mm of bone was rongeured to remove any superficial contamination in addition to the cleansing. An elliptical shaped graft of adequate size was then taken from the proximal forearm, avoiding neurovascular structures. * * * The graft was then fashioned to fit appropriately over each digit after defatting. These grafts were then sutured separately to the distal third and distal fourth digits using 6-0 nylon in running suture fashion.
 {¶ 12} 5. On March 15, 2006, Dr. Kemmler marked an "Amputation/Loss of Use Diagram, Left Hand Posterior (Dorsal) View" form provided by the Ohio Bureau of Workers' Compensation ("bureau"). The bureau form presents the bones of the left hand including its four fingers identified as the index, middle, ring, and little fingers. On the form, Dr. Kemmler drew a line across the middle and ring finger bones to indicate the amputation sites. Each line is clearly drawn well above the mid-way point between the DIP joint and the tip of the distal phalanx bone. Clearly, the lines are not drawn at or near the DIP joints of the middle and ring fingers. *Page 7 
 {¶ 13} 6. On April 24, 2006, claimant moved for "partial loss of use of his third and fourth fingers on his left hand (one-third loss each), pursuant to ORC section 4123.57(B)." In support, claimant submitted Dr. Kemmler's office notes beginning March 9, 2006, his March 15, 2006 amputation/loss of use diagram, and his March 10, 2006 operative report.
 {¶ 14} 7. On June 15, 2006, at the bureau's request, claimant was examined by Alan R. Kohlhaas, M.D., who wrote:
 He has some sensitivity in his fingertips and some sharp pains occasionally.
 * * *
 * * * Examination of the left third and fourth fingers, the fingertips have reconstituted. There is no deformity in the nail. There is slight dryness in the distal tips, with a slight decrease in sensation. Therefore, there is no sign of amputation.
 * * *
 * * * Based on the physical examination, the amputations have been corrected and healed and therefore the loss of use rating is 0.
 {¶ 15} 8. Following a July 17, 2006 hearing, a district hearing officer ("DHO") issued an order granting claimant's motion. The DHO's order explains:
 It is the finding of the District Hearing Officer that the injured worker has sustained a one third amputation loss of the third and fourth fingers of the left hand pursuant to O.R.C. 4123.57.
 This finding is based upon the amputation/loss of use diagram, dated 03/15/2006, signed by Dr. Kemmler and the operative report, dated 03/10/2006. *Page 8 
 {¶ 16} 9. Relator administratively appealed the DHO's order of July 17, 2006. Following a September 13, 2006 hearing, a staff hearing officer ("SHO") issued an order stating:
 The order of the District Hearing Officer, from the hearing dated 07/17/2006, is MODIFIED to the following extent: Therefore, the C-86 Motion filed by the injured worker on 04/24/2006, is GRANTED to the extent of this order. The injured worker is GRANTED a Scheduled Loss by Amputation for 1/3 of the Third (Long) Finger, Left Hand; 1/3 Loss Amputation Fourth (Ring) Finger, Left Hand.
 The employer argues that two (2) unreported Tenth Appellate District cases should control. The employer argues that [State ex rel. Kabealo v. Indus. Comm. (1990), Franklin App. No. 88AP-33] and [(State ex rel.) Tri County Business Services, Inc. v. Indus. Comm., Franklin App. No. 05AP-95, 2005-Ohio-6107] dictate that, for an amputation award, the amputation must be "near the joint."
 Essentially, this Staff Hearing Officer must address whether the injured worker has lost a sufficient amount of bone to warrant an amputation award. The 03/15/2006 report from Dr. Kemmler clearly indicates that more than just a minuscule amount of bone was amputated. Apparently, the meat cutting injury amputated some bone to begin with. Further bone was removed during an operative repair.
 Therefore, this Staff Hearing Officer finds sufficient evidence to award 1/3 amputations for the Left Fourth and Third Fingers.
 The Staff Hearing Officer reviewed and considered all evidence on file at the time of the hearing.
 The remainder of the order of the District Hearing Officer is affirmed in all other respects.
 This order is based upon the report of Dr. Kemmler, 03/15/2006.
(Emphasis sic.) *Page 9 
 {¶ 17} 10. On October 4, 2006, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of September 13, 2006.
 {¶ 18} 11. On December 13, 2006, relator, J.E.S. Foods, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 19} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 20} R.C. 4123.57(B) provides a schedule of weekly compensation for the loss of enumerated body parts. The statute provides:
 For the loss of a first finger, commonly called index finger, thirty-five weeks.
 For the loss of a second finger, thirty weeks.
 For the loss of a third finger, twenty weeks.
 For the loss of a fourth finger, commonly known as the little finger, fifteen weeks.
 * * *
 The loss of the third, or distal, phalange of any finger is considered equal to the loss of one-third of the finger.
 {¶ 21} In State ex rel. Kabealo v. Indus. Comm. (1990), Franklin App. No. 88AP-33, this court had occasion to interpret the above-quoted language which, at that time, appeared at R.C. 4123.57(C). This court held that "loss of the distal phalange means loss near the joint and not a partial loss." In Kabealo, the claimant's right index finger was smashed at its tip by an automatic tie-rod assembler machine. The commission denied the claimant's motion for a scheduled-loss award noting that medical evidence from the claimant's own physician indicates that only a portion of the flesh and nail bed of the distal *Page 10 
phalanx had been amputated. In Kabealo, this court denied the claimant's request for a writ of mandamus.
 {¶ 22} Recently, in [State ex rel.] Tri County Business Services, Inc.v. Indus. Comm., Franklin App. No. 05AP-95, 2005-Ohio-6107, this court followed its holding in Kabealo in a case involving a claim for a scheduled-loss award for loss of the distal phalange of the left thumb. In that regard, R.C. 4123.57(B) states: "The loss of a second, or distal, phalange of the thumb is considered equal to the loss of one half of such thumb."
 {¶ 23} In Tri County Business, adopting the decision of its magistrate, this court denied the request for a writ of mandamus. The magistrate's decision summarizes the medical evidence as follows:
 * * * According to the emergency services records, claimant sustained a loss of a 2 centimeter area of his thumb which included the radial corner of his distal phalanx. Pursuant to Dr. Kitzmiller's September 22, 2003 report, claimant's matrix nail is intact. The September 26, 2003 operative notes, signed by Dr. Kitzmiller, specifically indicate that following the surgery claimant's [interphalangeal] joint was flexed. Furthermore, the September 21, 2003 radiology report indicates that claimant sustained an amputation to the soft tissues of the tip of his thumb as well as a small portion of the lateral thumb tuft.
 The evidence in the record does show that claimant lost a portion of the bone of his distal phalanx. However, the evidence also shows that the amputation did not effect the [interphalangeal] joint of claimant's thumb and that the matrix nail was intact. * * *
Id. at ¶ 17-18. This court's magistrate in Tri County Business, concluded:
 Given this court's interpretation [in Kabealo] of the statute, the magistrate finds that the commission did abuse its discretion in granting claimant a permanent partial award for the loss of one-half of his thumb where the evidence shows *Page 11 
that claimant suffered a partial amputation of the distal phalanx which was not close to the [interphalangeal] joint and where the [interphalangeal] joint itself was able to be flexed.
Id. at ¶ 19.
 {¶ 24} That this court has adopted a standard for determining R.C.4123.57(B) phalange loss is not seriously disputed by the parties here. As noted, this court, in Kabealo held that "loss of the distal phalange means loss near the joint and not a partial loss." That standard was applied by this court again in Tri County Business.
 {¶ 25} It is clear that the commission did not follow the proper standard for determining R.C. 4123.57(B) phalange loss and, it is equally clear that there is no medical evidence in the record that could conceivably support phalange loss under the correct standard.
 {¶ 26} None of the medical evidence from Dr. Kemmler cited by the hearing officers supports a finding that the phalange loss of the two fingers at issue here was near the DIP joint.
 {¶ 27} While the SHO's order indicates that the SHO was aware of theKabealo and Tri County Business cases, the SHO failed to apply the standard that those cases hold. Rather, the SHO's order suggests that phalange loss can be premised upon bone loss that exceeds a miniscule amount. Clearly, that is not the standard to be applied.
 {¶ 28} Based upon the foregoing analysis, it is clear that the commission abused its discretion by applying an incorrect standard in awarding scheduled-loss compensation. Moreover, when applying the correct standard to the evidence of record, only one conclusion can be drawn — there is no medical evidence to support a finding of phalange loss. *Page 12 
 {¶ 29} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its order awarding R.C. 4123.57(B) scheduled-loss compensation for the alleged loss of the distal phalanges of the two fingers, and to enter an order denying said compensation.
[1] The medical evidence indicates that the amputations were actually to the second (long) and third (ring) fingers of the left hand as those fingers are identified at R.C. 4123.57(B). Dr. Kemmler consistently reports that the "3rd" and "4th"digits of the left hand were injured. Obviously, there are five digits, but only four fingers to each hand. Thus, the claim allowances incorrectly equate Dr. Kemmler's digit identification with R.C.4123.57(B)'s finger identification. *Page 1