DECISION
{¶ 1} Relator, Green Tokai Co., Ltd., commenced this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding to respondent Rodney L. Henderson ("claimant") R.C. 4123.57(B) scheduled-loss compensation for the loss of the third or *Page 2 
distal phalange of the first (index), second (long), and third (ring) fingers of his right hand, and to enter an order denying said compensation.
 {¶ 2} This court referred the matter to a magistrate of this court, pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate recommended that this court issue a writ of mandamus ordering the commission to vacate its staff hearing officer's ("SHO") order of March 31, 2006, that awards R.C. 4123.57(B) scheduled-loss compensation for the amputation or loss of the distal phalanges of three fingers of claimant's right hand, and to enter an order denying R.C. 4123.57(B) compensation. Claimant did not file objections to the magistrate's decision. However, the commission filed objections to the magistrate's decision, and, therefore, this matter is now before this court for a full, independent review.
 {¶ 3} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be *Page 3 
given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 4} By its objections to the magistrate's decision, the commission generally argues that the magistrate erred in finding no evidence upon which the commission could rely to support a finding that claimant has sustained the loss of the distal phalange of the second and third fingers of his right hand. The commission does not object to the magistrate's decision regarding the first finger of claimant's right hand, in effect conceding that it abused its discretion in its determination as to that finger.
 {¶ 5} The commission specifically argues that the magistrate erred in his assessment of the amputation diagram form concerning claimant's right hand, which was completed by Dr. Trzeciak on February 10, 2006. The amputation diagram form displays the bones of the right hand. Dr. Trzeciak marked the three amputation sites by drawing lines across the distal phalanges of the first, second, and third fingers. In his decision, the magistrate determined that the form completed by Dr. Trzeciak provides no evidence that claimant has sustained an amputation of a distal phalange at or near the joint. According to the magistrate, the "lines drawn across the distal phalanges are clearly not at or near the DIP [distal interphalangeal] joints of those phalanges." (Magistrate's decision, at ¶ 37.) The commission disagrees with that statement as to claimant's second and third fingers. The commission argues that the magistrate has reweighed the evidence and failed to afford the commission discretion in its application of the appropriate legal standard to the facts.
 {¶ 6} Relator argues that the magistrate's decision is supported by this court's decision in State ex rel. Bailey v. Indus. Comm. (Nov. 12, 1999), Franklin App. No. 99AP-152 *Page 4 
(Memorandum Decision), wherein this court adopted the conclusion of the magistrate that "the commission properly decided that amputation of the two-thirds of the distal phalange was not an amputation near the joint to support an award pursuant to R.C. 4123.57(B)." Additionally, relator argues that the magistrate's decision is supported by State ex rel.Werner v. Indus. Comm. (Apr. 18, 2000), Franklin App. No. 99AP-544 (Memorandum Decision), wherein this court stated that "the magistrate correctly found that, inasmuch as [the claimant] lost half or less of the distal phalange of his right index finger, he was not entitled to an award pursuant to R.C. 4123.57(B)."
 {¶ 7} We find relator's reliance upon Bailey and Werner to be unconvincing in the case at bar, as those decisions are "memorandum decisions," which have no binding precedential value. See State v.Gillman, Franklin App. No. 01AP-662, 2001-Ohio-3968; State ex rel.McDonald v. Indus. Comm. (Dec. 12, 1995), Franklin App. No. 94APD12-1738; and State ex rel. Stevenson v. Orient State Institute
(Sept. 30, 1992), Franklin App. No. 91AP-1152.
 {¶ 8} Conversely, for the reasons that follow, we find the commission's argument to be persuasive. In State ex rel. Kabealo v.Indus. Comm. (Mar. 8, 1990), Franklin App. No. 88AP-33, this court was presented with the question of how much severance of a distal phalange is required for an award of compensation under R.C. 4123.57(C), the pertinent language of which is now contained in R.C. 4123.57(B). This court determined that, under the statute, the "[l]oss of the distal phalange does not mean partial loss. Rather, it means severance near the joint." Kabealo.
 {¶ 9} According to the commission, it has discretion to determine whether an amputation is "near the joint" for purposes of R.C.4123.57(B). Relator argues that the *Page 5 
commission seeks to apply "unfettered authority" in determining whether a claimant has sustained a loss under R.C. 4123.57(B).
 {¶ 10} The "near the joint" standard expressed in Kabealo, which was based on this court's interpretation of the pertinent statutory language, necessarily leaves the commission with discretion, as the word "near" is an imprecise word used to describe proximity. Moreover, it would be inappropriate for this court to select a specific distance that would sufficiently constitute "near the joint," for purposes of determining whether a loss has occurred under R.C. 4123.57(B). This determination has been left to the sound discretion of the commission, which is reasonable considering "the distal phalange is small and distinctions are hard to draw." Kabealo. Thus, within the realm of what reasonably could be considered "near" the DIP joint, it is left to the commission to determine precisely what meets that standard.
 {¶ 11} Upon evaluating the evidence in this case, the commission determined that the claimant's "loss by way of amputation is sufficiently near the joint of each finger to constitute a loss of the distal phalange of each finger." As to claimant's first finger of his right hand, the commission does not in this mandamus action dispute that the line drawn across that distal phalange is not near the DIP joint, and thereby concedes that it abused its discretion in finding otherwise. This concession is reasonable considering the line on the amputation diagram form shows approximately one-half severance of the distal phalange on that finger. In that regard, a severance of one-half of the distal phalange reasonably could not be considered "near the joint," as that point is equidistant between the distal tip of the finger and the DIP joint. *Page 6 
 {¶ 12} As to the distal phalanges of claimant's second and third fingers, we find that the point of severance on these phalanges could reasonably be considered "near the joint," as Dr. Trzeciak's markings on the amputation diagram form show amputations clearly beyond the halfway points on these phalanges. Therefore, we resolve that the amputation diagram form constitutes some evidence upon which the commission could rely to support an award of compensation. Accordingly, we conclude that the commission did not abuse its discretion in determining that claimant has sustained a loss of the distal phalange of his second and third fingers on his right hand.
 {¶ 13} Following our independent review of this matter, we find that the magistrate properly discerned the pertinent facts. Therefore, we adopt the magistrate's findings of fact. Furthermore, we find no error in the magistrate's decision as it relates to claimant's first finger on his right hand. However, for the reasons stated above, we do not concur with the magistrate's conclusions of law as to claimant's second and third fingers on his right hand. Thus, we sustain the commission's objections to the magistrate's decision. Accordingly, we hereby issue a writ of mandamus ordering the commission to vacate its order awarding R.C. 4123.57(B) scheduled-loss compensation for the amputation or loss of the distal phalange of claimant's first finger of his right hand, and to enter an order denying R.C. 4123.57(B) compensation as to that finger. As to the other two fingers that are the subject of this action, the requested writ is denied.
Objections sustained; writ of mandamus granted in part and denied inpart.
FRENCH and GREY, JJ., concur.
GREY, J., retired of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 7 *Page 8 
 APPENDIX A MAGISTRATE'S DECISION Rendered on January 10, 2007 IN MANDAMUS {¶ 14} In this original action, relator, Green Tokai Co., Ltd., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding to respondent Rodney L. Henderson ("claimant") R.C. 4123.57(B) *Page 9 
scheduled-loss compensation for the loss of the third or distal phalange of the first (index), second (long), and third (ring) fingers of his right hand, and to enter an order denying said compensation.
Findings of Fact: {¶ 15} 1. On March 24, 2005, claimant sustained traumatic amputations of portions of three fingers of his right hand while employed as a machine operator for relator, a self-insured employer under Ohio's workers' compensation laws. The industrial claim is allowed for "right tip amputation of second, third and fourth fingers[1]; post traumatic stress disorder and depression," and is assigned claim number 05-817843.
 {¶ 16} 2. The morning following the injury, Marc A. Trzeciak, D.O., performed a surgical revision of the amputations. Sometime thereafter, Dr. Trzeciak performed a second surgery relating to the long and ring fingers.
 {¶ 17} 3. On December 8, 2005, claimant moved for R.C. 4123.57(B) scheduled-loss compensation. Relator sought a "1/3 amputation award of his right 2nd, 3rd and 4th fingers."
 {¶ 18} 4. On February 10, 2006, Dr. Trzeciak completed bureau form C-196 which is captioned "Amputation/Loss of Use Diagram[,] Right Hand Posterior (Dorsal) View." The form displays the bones of the right hand. Dr. Trzeciak marked the three amputation sites by drawing lines across the distal phalanges of the index, long and ring finger bones.
 {¶ 19} 5. On March 7, 2006, at relator's request, claimant was examined by Alan R. Kohlhaas, M.D., who reported: *Page 10 
 We examined today Rodney Henderson, a 29 year-old gentleman, employed as a machine operator. On the day of injury of 3-24-05 he was working in the rubber department when his right hand got caught in the mill. He was transported by ambulance to Good Samaritan Hospital, where he stayed the night, then he was transferred to Grandview Southview Hospital the following morning for outpatient surgery. Dr. Trzeciak revised the right index, long and ring finger amputations. For the index finger he left the matrix on, taking off the distal tip of the finger and closing it. There is very little bone removed from the index finger. For the long and ring finger[s] there is apparently about a half of the distal phalanx of each finger was removed, either by the injury or the surgery to correct it and the nail matrix has also been removed. Post-operatively the wounds healed up. He developed some redness of the nail matrix that were causing an infection in both the long and ring finger[s] and therefore it was revised and removed at the second surgery.
 * * *
 CURRENT SYMPTOMS:
 The fingertips are very sensitive. He has pain in his finger and hand, also the fingers are cold when compared to the other hands and he has decreased grip strength.
 PHYSICIAL EXAMINATION:
 On physical examination of the index finger shows a slight curved nail matrix, suggesting that there is a very distal tip of the finger soft tissue loss with a very small piece of bone causing a slight curvature of the nail matrix. For the long and ring finger[s], the matrix is gone and the wounds are well healed. There is a slight deformity in both of the incisions present, which is tender. Based on the physical examination he's lost half of the distal phalanx on both long and ring finger[s]. All three fingers are sensitive to very light touch.
 OPINIONS AND COMMENTS:
 In specific answer to your questions:
 Issue #1: Should Mr. Henderson be awarded a 1/3 amputation award for his second, third and/or fourth fingers of his right hand? *Page 11 
 Response: No, based on Figures 16.5, page 443 of the AMA Guides to the Evaluation of Permanent Impairment, Fifth Edition, for his index finger he has a 10% impairment and for the long and ring finger[s] he has a 20% impairment of each, long and ring finger[s]. Using Table 16.1, page 438, the 10% impairment of the index finger equals a 2% impairment of the hand. For the long finger the 20% impairment of the long finger equals a 4% impairment of the hand and for the ring finger the 20% impairment equals a 2% impairment of the hand. Adding the 2 + 4 + 2 equals an 8% impairment of his hand. Using Table 16.2 the 8% impairment of his hand translates to a 7% impairment of his right upper extremity. Using Table 16.3 the 7% impairment of the right upper extremity equals a 4% whole person impairment for his three partial amputation[s].
 Therefore, in conclusion, the amount of amputation does not justify a 1/3 amputation award for his 2nd, 3rd, and 4th fingers of his right hand. This is based on the AMA Guides to the Evaluation of Permanent Impairment, Fifth Edition.
 {¶ 20} 6. Following a March 10, 2006 hearing, a district hearing officer ("DHO") issued an order awarding compensation. The DHO's order explains:
 The District Hearing Officer orders that the injured worker shall be granted a scheduled loss award for 1/3 of the right first (index) finger, 1/3 of the right second (middle) finger and 1/3 loss of the right third (ring) finger.
 The District Hearing Officer finds that Dr. Kohlhaas and Dr. Trzeciak each specified in reports, dated 03/07/2006 and 02/10/2006, respectively, that there was boney loss of each of the distol [sic] balanxus [sic] or phalanges of the right index, middle and ring fingers.
 Consequently, the District Hearing Officer orders that the injured worker shall be entitled to awards for the loss of 1/3 of the first (index), second (middle) and third (ring) in accord with Ohio Revised Code Section 4123.57(B).
 {¶ 21} Relator administratively appealed the DHO's order of March 10, 2006.
 {¶ 22} On March 17, 2006, claimant was seen in the office of Dr. Trzeciak who wrote: *Page 12 
 He was seen in the office today. He states that he is having tremendous pain at the middle and ring finger[s]. The bone that is present in the middle finger is bothering him, and he says that any light touch causes hypersensitivity. He feels that there are nail horns growing back to the ring finger. We have talked about this for a long time. He wants revision amputation as he feels he cannot progress beyond this point. I understand where he is coming from and will try to revise both the middle finger and ring finger, but I think that this should be the last operation on this gentleman and he should be able to move forward from this and return to work in some capacity. We tried to make that clear to him, and he understands. We will schedule him for surgery in a timely fashion. We will do a revision amputation and shortening of the bone to the middle finger and removal of the nail horns to the ring. * * *
 {¶ 23} 9. Following a March 31, 2006 hearing, a staff hearing officer ("SHO") issued an order stating:
 The order of the District Hearing Officer, from the hearing dated 03/31/2006, is affirmed with the following additional findings.
 It is the order of the Staff Hearing Officer that the injured worker's C-86 motion, filed on 12/08/2005 be granted to the extent of this order.
 By his motion, the injured worker requests an award for loss by way of amputation of 1/3 of his right second, third and fourth fingers.
 It is the finding of the Staff Hearing Officer that the injured worker has suffered a 1/3 loss by way of amputation, of his right first (index) finger, his right second (middle) finger and his right third (ring) finger.
 The Staff Hearing Officer finds that the injured worker has proven by a preponderance of the evidence that he has suffered the loss of the third, or distal, phalange of the fingers noted above as a result of the amputation arising from this industrial injury.
 It is therefore the order of the Staff Hearing Officer that the injured worker be awarded a scheduled loss pursuant to Ohio Revised Code Section 4123.57(B) for this loss. *Page 13 
 The Staff Hearing Officer finds that the injured worker's loss by way of amputation is sufficiently near the joint of each finger to constitute a loss of the distal phalange of each finger
 These findings in this order are based upon the injured worker's testimony and presentation at hearing, as well as upon the medical report of Dr. Kohlhaas, dated 03/07/2006 and the amputation/loss of use diagram medical report completed by Dr. Trzeciak, in which is dated 02/10/2006.
 {¶ 24} 10. On May 6, 2006, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of March 31, 2006.
 {¶ 25} 11. On June 22, 2006, relator, Green Tokai Co., Ltd., filed this mandamus action.
Conclusions of Law: {¶ 26} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 27} R.C. 4123.57(B) provides a schedule of weekly compensation for the loss of enumerated body parts. The statute provides:
 For the loss of a first finger, commonly called index finger, thirty-five weeks.
 For the loss of a second finger, thirty weeks.
 For the loss of a third finger, twenty weeks.
 For the loss of a fourth finger, commonly known as the little finger, fifteen weeks.
 * * *
 The loss of the third, or distal, phalange of any finger is considered equal to the loss of one-third of the finger.
 {¶ 28} In State ex rel. Kabealo v. Indus. Comm. (1990), Franklin App. No. 88AP-33, this court had occasion to interpret the above-quoted language which, at that time, *Page 14 
appeared at R.C. 4123.57(C). This court held that "loss of the distal phalange means loss near the joint and not a partial loss." InKabealo, the claimant's right index finger was smashed at its tip by an automatic tie-rod assembler machine. The commission denied the claimant's motion for a scheduled-loss award noting that medical evidence from the claimant's own physician indicates that only a portion of the flesh and nailbed of the distal phalanx had been amputated. InKabealo, this court denied the claimant's request for a writ of mandamus.
 {¶ 29} Recently, in [State ex rel.] Tri County Business Services, Inc.v. Indus. Comm., Franklin App. No. 05AP-95, 2005-Ohio-6107, this court followed its holding in Kabealo in a case involving a claim for a scheduled-loss award for loss of the distal phalange of the left thumb. In that regard, R.C. 4123.57(B) states: "The loss of a second, or distal, phalange of the thumb is considered equal to the loss of one half of such thumb."
 {¶ 30} In Tri County Business, adopting the decision of its magistrate, this court denied the request for a writ of mandamus. The magistrate's decision summarizes the medical evidence as follows:
 * * * According to the emergency services records, claimant sustained a loss of a 2 centimeter area of his thumb which included the radial corner of his distal phalanx. Pursuant to Dr. Kitzmiller's September 22, 2003 report, claimant's matrix nail is intact. The September 26, 2003 operative notes, signed by Dr. Kitzmiller, specifically indicate that following the surgery claimant's [interphalangeal] joint was flexed. Furthermore, the September 21, 2003 radiology report indicates that claimant sustained an amputation to the soft tissues of the tip of his thumb as well as a small portion of the lateral thumb tuft.
 The evidence in the record does show that claimant lost a portion of the bone of his distal phalanx. However, the *Page 15 
evidence also shows that the amputation did not effect the [interphalangeal] joint of claimant's thumb and that the matrix nail was intact. * * *
Id. at ¶ 17-18. This court's magistrate in Tri County Business, concluded:
 Given this court's interpretation [in Kabealo] of the statute, the magistrate finds that the commission did abuse its discretion in granting claimant a permanent partial award for the loss of one-half of his thumb where the evidence shows that claimant suffered a partial amputation of the distal phalanx which was not close to the [interphalangeal] joint and where the [interphalangeal] joint itself was able to be flexed.
Id. at ¶ 19.
 {¶ 31} It is clear from the above-discussed authorities that there is no evidence upon which the commission could rely to support a finding that the instant claimant has sustained the loss of any distal phalange. Accordingly, this court must issue a writ of mandamus ordering the commission to vacate its R.C. 4123.57(B) scheduled-loss award.
 {¶ 32} Dr. Kohlhaas wrote in his March 7, 2006 report, that Dr. Trzeciak had revised the right index, long and ring finger amputations and that he left the index finger matrix on, taking off the distal tip of the finger and closing it. There is very little bone removed from the index finger, according to Dr. Kohlhaas's report.
 {¶ 33} Parenthetically, it can be noted that the nail matrix is synonymous with nailbed, and that the nailbed is that portion of a finger covered by the nail. Taber's Cyclopedic Medical Dictionary (20 Ed.2005) 1427.
 {¶ 34} Clearly, given that the nail matrix or nailbed remains of the index finger and that very little bone was removed, claimant has not sustained an amputation of his index finger at or near the distal interphalangeal ("DIP") joint. Thus, the commission cannot grant a scheduled-loss award for loss of the distal phalange of the index finger. *Page 16 
 {¶ 35} According to Dr. Kohlhaas's report, for the long and ring fingers, claimant has lost about one-half of the distal phalanx of each finger, and the nail matrixes on those two fingers have been surgically removed.
 {¶ 36} Clearly, loss of the nail matrix of a finger does not indicate loss at or near the DIP joint where it can be said that the loss is about one-half of the distal phalanx of the finger. Thus, Dr. Kohlhaas's report provides no evidence of amputation at or near the joint with respect to the long and ring fingers.
 {¶ 37} Likewise, the form completed by Dr. Trzeciak on February 10, 2006, provides no evidence that claimant has sustained an amputation of a distal phalange at or near the joint. The lines drawn across the distal phalanges are clearly not at or near the DIP joints of those phalanges.
 {¶ 38} The magistrate notes that Dr. Trzeciak states in his March 17, 2006 office note that surgery will be scheduled to do a "revision amputation and shortening of the bone to the middle finger and removal of the nail horns to the ring." Apparently, that surgery was not performed, nor the results reported to the commission prior to the March 31, 2006 hearing before the SHO. Thus, it would be pure speculation to conclude that the surgery, as presumably scheduled, resulted in an amputation of a phalange at or near the DIP joint. Clearly, Dr. Trzeciak's March 17, 2006 office note provides no evidence of phalangeal loss at or near the joint.
 {¶ 39} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its SHO's order of March 31, 2006, that awards R.C.4123.57(B) scheduled-loss compensation for the *Page 17 
amputation or loss of the distal phalanges of three fingers of the right hand, and to enter an order denying R.C. 4123.57(B) compensation.
[1] Apparently, the claim allowance numbers the injured fingers as if the thumb is the first finger of the hand. It is undisputed that the index, long and ring fingers were injured. R.C. 4123.57(B) identifies the index, long and ring fingers respectively as the first, second and third fingers of the hand. *Page 1