[Cite as *State ex rel. Diamond v. Indus. Comm.*, 2024-Ohio-2499.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio ex rel.
Caleb Diamond,                                    :

                                                  :

            Relator,                              :        No. 22AP-360

                                                  :
v.                                                        (REGULAR CALENDAR)
                                                  :
Industrial Commission of Ohio et al.,
                                                  :
            Respondents.
                                                  :

                                                  :

---

D E C I S I O N

Rendered on June 28, 2024

---

**On brief:** *Gloria P. Castrodale*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *David M. Canale,* for respondent Industrial Commission of Ohio.

**On brief:** *Dinsmore & Shohl LLP*, *Jared L. Buker*, and *Christopher A. Benintendi*, for respondent OneSource Employee Management LLC.

---

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LELAND, J.

{¶ 1} Relator, Caleb Diamond, filed an original action seeking a writ of mandamus ordering respondents Industrial Commission of Ohio ("commission") and OneSource Employee Management LLC ("OneSource") to vacate the order denying relator's request for payment of a scheduled award for total loss/total loss of use, and to enter an order finding relator entitled to such benefits.

**I. Facts and Procedural History**

{¶ 2}    Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto.  Having independently reviewed the record and the magistrate's decision, we adopt the magistrate's findings of fact as our own.

{¶ 3}    Of particular relevance here, the magistrate made the following findings of fact.  On July 22, 2020, Dr. Rannie Alsamkari amputated relator's left index finger "at the middle phalanx" and left middle finger "at the middle phalanx level."  (Appended Mag.'s Decision at ¶ 22.)  On August 13, 2020, Dr. Michael Rymer operated on relator's left hand, "disarticulat[ing] the middle finger at the proximal interphalangeal joint ('PIP') level; transect[ing] the head of the proximal phalanx off on the left middle finger; and disarticulat[ing] the index finger at the PIP joint with the middle removed sharply." (Appended Mag.'s Decision at ¶ 23.)  Dr. Rymer completed an amputation diagram form that "shows a line drawn through the middle of the head of the proximal phalange of the middle finger and a line draw[n] through the PIP joint of the index finger."  (Appended Mag.'s Decision at ¶ 23.)  A subsequent medical examination by Dr. Aaron Fritz found relator's left hand had "an amputation through the PIP joint of the left index finger," while the "left middle finger reveal[ed] an amputation of the PIP joint."  (Appended Mag.'s Decision at ¶ 25.)  Drs. Rohn Kennington and Rymer both determined relator suffered a total loss of the index and middle fingers of the left hand based on their understanding that loss of more than the middle and distal phalanx of a finger is equivalent to total loss.  Dr. Fritz, in his March 17, 2022 addendum report, found relator has a "left index finger amputation through the PIP joint and left middle finger amputation at the PIP joint." (Appended Mag.'s Decision at ¶ 31.)

{¶ 4}    The magistrate concluded the commission did not abuse its discretion in finding the report of Dr. Fritz more credible than those of Drs. Rymer or Kennington.  The magistrate further determined Dr. Fritz's addendum report constituted "some evidence" upon which the commission could rely in finding relator did not lose more than the middle

and distal phalanges of the left middle and index fingers. On those bases, the magistrate recommended this court deny relator's petition for a writ of mandamus.

{¶ 5} Relator timely filed three objections to the magistrate's decision, and the commission and OneSource filed separate memorandum contras to the objections.

## II. Objections

{¶ 6} Relator filed the following objections to the magistrate's decision:

> [I]. The Magistrate erroneously relied upon a non-applicable case to find that the industrial commission properly denied [relator's] request for total loss of his left index finger and left middle finger.

> [II.] The Magistrate erroneously failed to address [relator's] position that a total removal of the PIP joint there resulting in the absence of that joint is sufficient for a finding of a total loss of use of a finger.

> [III.] The Magistrate erred when he found the employer's physician's review rose to the level of some evidence upon which the commission could rely in order to deny [relator's] motion for total loss or total loss of use of his left index finger and left middle finger.

## III. Res Judicata

{¶ 7} As a preliminary matter, the commission alleges relator's claim for total loss should be barred by res judicata because he previously received an award of two-thirds loss of the same fingers, and there have been no intervening injuries meriting a revised award. "Res judicata operates 'to preclude the relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction.' " (Emphasis omitted.) *State ex rel. Kroger Co. v. Indus. Comm.*, 80 Ohio St.3d 649, 651 (1998), quoting *Office of Consumers' Counsel v. Public Utilities Comm.*, 16 Ohio St.3d 9, 10 (1985). Although the principle of res judicata "applies to proceedings before the Industrial Commission," in order for it to apply, "the issue under consideration must have been 'passed upon' or 'conclusively decided' in an earlier proceeding." *Id.*, quoting *Office of Consumers' Counsel* at 10.

{¶ 8}   Here, even by the commission's own recitation of this claim's procedural history, res judicata does not apply.  On September 28, 2020, relator filed a motion with the Ohio Bureau of Workers' Compensation ("BWC") requesting compensation for the two-thirds loss of his middle and index fingers.  Then, OneSource "[stood] in the shoes of the BWC" and "accept[ed] the motion in its entirety." (Industrial Commission's Brief at 17-18.)  The commission does not claim the BWC held a hearing or issued a decision in response to relator's motion, and, because relator did not "object to or appeal the decision of the self-insured employer granting a two-thirds loss," neither has any court previously reviewed relator's motion.  (Industrial Commission's Brief at 18.)  OneSource promptly offered to pay relator's two-thirds loss request without an order to do so, and that is not equivalent to a court or agency " 'pass[ing] upon' " or " 'conclusively decid[ing]' " the matter in a formal proceeding.  *Kroger* at 651, quoting *Office of Consumers' Counsel* at 10.  Thus, res judicata does not bar relator from filing a subsequent request for total loss of the left middle and index fingers because the request for two-thirds loss of the same fingers was never " 'passed upon by a court of competent jurisdiction.' " *Id.*

## IV. Analysis

{¶ 9}   In ruling on objections to a magistrate's decision, this court conducts an independent review to ensure the magistrate "properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). We "may adopt or reject a magistrate's decision in whole or in part, with or without modification." Civ.R. 53(D)(4)(b).  Seeing as the findings of fact are not in dispute, relator challenges only the magistrate's conclusions of law and the application of the facts to the law.  Further, while some of the below discussion necessitates the use of medical terminology, the central question in this dispute simply asks what extent of finger loss amounts to a total loss for purposes of workers' compensation.

## A. First Objection

{¶ 10} Relator's first objection alleges the magistrate's decision inappropriately applied *State ex rel. Green Tokai v. Indus. Comm.*, 10th Dist. No. 06AP-642, 2007-Ohio-4688, to the present case.  We agree.  In *Green Tokai*, the claimant had amputations along the distal phalanges of three fingers, and the issue was "how much severance of a distal

phalange is required for an award of compensation" under R.C. 4123.57(B). *Id.* at ¶ 8, citing *State ex rel. Kabealo v. Indus. Comm.*, 10th Dist. No. 88AP-33 (Mar. 8, 1990). R.C. 4123.57(B), it should be observed, is a lengthy section of law; the R.C. 4123.57(B) language we employ in our analysis is entirely distinct from that examined in *Green Tokai*, notwithstanding the matching statutory section. Case law cited in *Green Tokai* developed a standard that would find a claimant entitled to an award for loss of the distal phalanx if the amputation was " 'near the joint.' " *Id.*, quoting *Kabealo*. *Green Tokai* allocated discretionary authority to the commission to determine whether an amputation was " 'near the joint' " because "the word 'near' is an imprecise word used to describe proximity." *Id.* at ¶ 10. This court found the application of this subjective standard was best left to the commission as the finder of fact. While the application of the " 'near the joint' standard" is appropriate for amputations of the distal phalanx, R.C. 4123.57(B) demands a different standard for amputations that implicate loss of the whole finger. In such cases, the commission's role is to discover whether relator lost "more than" the distal and middle phalanges.

{¶ 11} R.C. 4123.57(B) provides "[t]he loss of more than the middle and distal phalanges of any finger is considered equal to the loss of the whole finger." A finger consists of three phalanges: distal, middle, and proximal. The distal phalanx is the tip of the finger, and it connects to the middle phalanx at the DIP joint. The middle phalanx then connects to the proximal phalanx at the PIP joint. The parties disagree on the statutory definition for loss of the whole finger. Relator argues removal of the PIP joint is sufficient, while the commission suggests total loss requires an amputation of at least 50 percent of the proximal phalanx. "When it comes to interpretation of text involving common words used in their ordinary sense, there will rarely, if ever, be a need for a court to look to an agency interpretation." *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 172 Ohio St.3d 225, 2022-Ohio-4677, ¶ 47. Interpreting the meaning of "more than" as that phrase is used in R.C. 4123.57(B) is a task "well within the judiciary's core competence." *Id.* Thus, we will interpret the statute de novo, without deference to either party's legal conclusions.

{¶ 12} We hold that, pursuant to R.C. 4123.57(B), loss of "more than the middle and distal phalanges" is equivalent to a loss of any part of the proximal phalanx. Consequently, once the commission determines a claimant's injury resulted in the severance of some part of the proximal phalanx, it must treat the injury as a loss of the whole finger. The statutory language provides no basis for the commission's position that at least half of the proximal phalanx must be removed to qualify for loss of the whole finger, nor did the commission explicate how it reached that conclusion. As to relator's interpretation, while it is possible that removal of the PIP joint would result in the loss of "more than the middle and distal phalanges," that fact alone is not necessarily dispositive of the issue. Whether the amputation of a finger qualifies as a loss of the whole finger depends on the particular facts of each case.

{¶ 13} The evidence here indicates relator's middle and index fingers were amputated at different locations. Even the commission's preferred witness, Dr. Fritz, accounted for this distinction: his addendum report on relator described "an amputation *through* the PIP joint of the left index finger," while the "left middle finger reveal[ed] an amputation *of* the PIP joint." (Emphasis added.) (Appended Mag.'s Decision at ¶ 25.) In other words, the amputation removed the PIP joint in the middle finger by "transect[ing] the head of the proximal phalanx off," whereas the index finger amputation occurred "at the PIP joint." (Appended Mag.'s Decision at ¶ 23.) The amputation of the middle finger thus removed part of relator's proximal phalanx. R.C. 4123.57(B) then requires the commission to consider relator's middle finger amputation to be a total loss of the whole finger, and failing to do so was an error of law. The amputation of the index finger, however, did not remove any part of the proximal phalanx. For that reason, the commission correctly determined relator lost no more than two-thirds of his index finger.

{¶ 14} Properly applying R.C. 4123.57(B), the commission was obligated to conclude relator suffered a loss of his whole left middle finger. However, the commission correctly adjudicated that relator lost no more than two-thirds of his left index finger. Accordingly, we sustain relator's first objection insofar as it disputes the application of *Green Tokai* to the facts of this case.

**B. Second Objection**

{¶ 15} Relator's second objection complains the magistrate failed to address relator's analogy between ankylosis of the joint below the middle phalanx and amputation at the PIP joint that was present in this case. Review of the magistrate's decision, however, reveals the magistrate explicitly addressed relator's argument. The magistrate deemed R.C. 4123.57(B) to be directly on point, and, because the statute controls, there was no need to resort to analogy. We find no merit in the contention the magistrate failed to address relator's ankylosis analogy. Accordingly, we overrule relator's second objection.

**C. Third Objection**

{¶ 16} Relator's third objection contends the reports produced by OneSource's physician, Dr. Fritz, do not rise to the level of "some evidence" upon which the commission could rely to deny total loss of relator's middle and index fingers. In light of our determination that R.C. 4123.57(B) obliged the commission to find relator suffered a total loss of the left middle finger, the third objection is moot as to that specific claim. We will, however, address the merits of this objection as it relates to the left index finger.

{¶ 17} Specifically, relator argued Dr. Fritz may not have been informed of the relevant legal standard for loss of the whole finger at the time he produced his addendum report. The magistrate has already directly addressed this claim, and relator's mere disagreement with the magistrate's conclusion is not persuasive. Next, relator argued Dr. Fritz's addendum report is: (1) not supported by any specific medical evidence, and (2) factually inconsistent with his findings in a prior report. Dr. Fritz's addendum report is based on a firsthand medical examination of relator, so relator's claim that the report lacks a basis in specific evidence is dubious. Further, while the facts of Dr. Fritz's addendum report conflict with those contained in his initial report, the magistrate's decision thoroughly explained why this need not preclude the commission from considering these findings as "some evidence" upon which to base its decision. Relator's objection on this point offers no compelling reason for us to diverge from the magistrate's decision. While relator disagrees with the commission's decision to value the reports of Dr. Fritz over the other expert witnesses, it is not for this court to weigh the evidence or the credibility of specific expert reports. Rather, we merely conclude the commission did not abuse its

discretion in relying on the addendum report of Dr. Fritz in denying relator's motion for loss of the whole left index finger. That report constituted some evidence upon which the commission could properly rely.

{¶ 18} Accordingly, we overrule relator's third objection as it pertains to his left index finger. As to relator's left middle finger, we render the objection as moot.

## V. Conclusion

{¶ 19} Upon review of the magistrate's decision, an independent review of the record, and due consideration of relator's objections to the magistrate's decision, we find the magistrate has properly determined the facts but, in some instances, misinterpreted the law. For the reasons explained above, we sustain relator's first objection, overrule his second objection, and overrule in part and render moot in part his third objection. We grant a limited writ of mandamus ordering the commission to vacate its order denying relator's request for payment of a scheduled award for total loss of the left middle finger and, instead, enter an order granting relator such an award. Further, we deny relator's additional request for a writ of mandamus seeking an award for the total loss of his left index finger.

*Objections sustained in part and overruled in part;*
*limited writ of mandamus granted in part and denied in part.*

MENTEL, P.J., and BEATTY BLUNT, J., concur.

———————————

[Cite as *State ex rel. Diamond v. Indus. Comm.*, 2024-Ohio-2499.]

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Caleb Diamond, | : | |
| Relator, | : | |
| v. | : | No. 22AP-360 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

---

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on January 4, 2024

---

*Gloria P. Castrodale*, for relator.

*Dave Yost*, Attorney General, and *David M. Canale*, for respondent Industrial Commission of Ohio.

*Dinsmore & Shohl LLP, Jared L. Buker*, and *Christopher A. Benintendi*, for respondent OneSource Employee Management LLC.

---

### IN MANDAMUS

{¶ 20} Relator, Caleb Diamond ("claimant"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that denied claimant's request for payment of a total loss/total loss of use, and to enter an order granting such compensation.

Findings of Fact:

{¶ 21} 1. Claimant was injured on July 22, 2020, in the course of and arising from his employment with respondent, OneSource Employee Management LLC ("employer"), when his left hand was caught in a machine. His workers' compensation claim was allowed for the following: crushing injury of left hand; fracture of phalanx (sometimes referred to as "phalange," which are the bones in the finger from one knuckle to the next) of left index finger; displaced fracture of proximal phalanx of left middle finger; displaced fracture of proximal phalanx of left ring finger; generalized anxiety disorder; and neuroma of left index finger.

{¶ 22} 2. On July 22, 2020, Rannie Alsamkari, M.D., performed the following procedures on claimant's left hand: left index finger revision amputation at the middle phalanx; left middle finger amputation at the middle phalanx level; left middle finger repair of cestral slip of the extensor mechanism; and left ring finger revision amputation at the distal phalanx level.

{¶ 23} 3. On August 13, 2020, Michael Rymer, M.D., performed the following operative procedures on claimant's left hand: disarticulated the middle finger at the proximal interphalangeal joint ("PIP") level; transected the head of the proximal phalanx off on the left middle finger; and disarticulated the index finger at the PIP joint with the middle removed sharply. An amputation diagram form completed by Dr. Rymer shows a line drawn through the middle of the head of the proximal phalange of the middle finger and a line draw through the PIP joint of the index finger. His operative report indicated that the procedure preserved enough length of claimant's index finger that he will be able to use it for pinch.

{¶ 24} 4. On September 28, 2020, claimant filed a motion for a two-thirds loss of the left index finger and a two-thirds loss of the left middle finger. On October 14, 2020, the self-insured employer accepted and approved the motion. This determination is not disputed.

{¶ 25} 5. On December 23, 2020, claimant underwent an independent medical examination ("IME") by Aaron Fritz, D.O. for extent of disability and necessity of treatment. In his report, Dr. Fritz found the following, in pertinent part: (1) claimant has an amputation through the PIP joint of the left index finger; (2) flexor extensor tendon

function is weak when he attempts to pinch against that; (3) proximal portion of the index finger gives way due to flexor tendon weakness; (4) claimant's left middle finger reveals an amputation of the PIP joint; (5) claimant has difficulty pinching against the middle finger because of weakness and give-way with flexion; (6) claimant is not capable of performing any pinching or grasping that would require use of the index, middle, and/or ring fingers; (7) there is impairment associated with these fingers from the amputations with two-jaw pinch, fine manipulation, and holding onto objects in a pinching mechanism; currently he is not capable of performing these types of activities; (8) claimant's use of left hand should be limited; (9) claimant is not capable of performing activities that require bilateral hand dexterity due to the impairment of the left hand; and (10) claimant's restrictions are permanent unless he receives prosthetics.

{¶ 26} 6. On October 20, 2021, claimant underwent an IME by Dr. Fritz for extent of disability, maximum medical improvement ("MMI"), recommended treatment, and restrictions. Dr. Fritz found, in pertinent part: (1) left index finger flexor and extensor tendon function are weak and difficulty with pinch strength, thumb to index pinch; (2) claimant would have work restrictions that involve no pinching or grasping using the left index finger, middle finger, or ring finger; (3) claimant could not do two-jaw pinch for fine manipulation or holding onto objects in a pinching mechanism, and he would be restricted from performing these activities; (4) claimant cannot perform repetitive use of the left hand; and (5) claimant cannot perform tasks that require bilateral hand dexterity due to the impairment of his left hand.

{¶ 27} 7. On November 22, 2021, claimant filed a second C-86 motion requesting two additional allowances and the granting of a total loss of the left index and left middle fingers by amputation. Claimant also requested that any award for total loss of the index and middle fingers be reduced by the prior award paid for two-thirds loss of use of the index and middle fingers.

{¶ 28} 8. A hearing was held before a district hearing officer ("DHO"), and the DHO issued a January 26, 2022, order denying in part and granting in part claimant's motion, finding the following: (1) the claim is allowed for the additional conditions of left index finger amputation though PIP joint and left middle finger amputation at PIP joint; (2)

portions of the motion seeking compensation for scheduled loss/loss of use-total loss of use, left index and left middle fingers are denied; (3) claimant has not established by a preponderance of the medical evidence that he has suffered total loss/total loss of use of the left index and left middle fingers; (4) a medical opinion has not been submitted to the claim file that states or supports a finding that claimant has suffered total loss/total loss of use of the left index and left middle fingers; and (5) the DHO relies upon the October 20, 2021, report of Dr. Fritz. Claimant appealed.

{¶ 29} 9. On February 21, 2022, claimant underwent an IME by Rohn Kennington, D.O., who found the following: (1) claimant has difficulty grasping or pinching any objects with his left hand; (2) left index finger is amputated at the PIP joint level; (3) left middle finger is amputated at the PIP joint level; (4) left ring finger is amputated just distal to the distal interphalangeal ("DIP") joint; (5) grip strength and pinch strength for left hand is 3/5+; (6) fine motor coordination is grossly impaired in the left hand; (7) the commission is directed to grant an award for total loss of use of a finger when the claimant suffers ankylosis of the PIP joint of a finger; in other words, ankylosis of the joint below the middle phalanx is a loss of more than the middle and distal phalanges of the finger; and (8) based on the commission's directive, claimant has suffered total loss of use of his left index and middle fingers. In an attached questionnaire, Dr. Kennington indicated: (1) claimant has a loss of his whole left index and middle fingers, with loss of the whole finger being defined as the loss of more than the middle and distal phalanx of a finger is equal to loss of whole finger; and (2) claimant has a total loss of use of the left index and left middle fingers.

{¶ 30} 10. In a March 15, 2022, questionnaire, Dr. Rymer indicated: (1) claimant has a loss of his whole left index and middle fingers, with loss of the whole finger being defined as the loss of more than the middle and distal phalanx of a finger is equal to loss of whole finger; and (2) claimant has a total loss of use of the left index and left middle fingers.

{¶ 31} 11. On March 17, 2022, Dr. Fritz completed an addendum ("addendum"), in which he found the following: (1) claimant has a left index finger amputation through the PIP joint and left middle finger amputation at the PIP joint; (2) the allowed conditions of the claim have not caused a full loss of the left index and left middle fingers; (3) claimant does not have total loss of use of those fingers; (4) claimant still has one third of the fingers

remaining in both index and middle fingers; (5) the remaining one third of his fingers are functional, and he has some degree of ability to pinch against them; and (6) the impairment would not be described as a full loss of use of the left index and middle fingers.

{¶ 32} 12. A hearing was held before a staff hearing officer ("SHO"), and on March 29, 2022, the SHO issued a decision, in which the SHO found the following: (1) the DHO's order is vacated; (2) claimant's C-86 motion is granted in part and denied in part; (3) based upon Dr. Fritz's March 17, 2022, report, the medical conditions are causally related to the industrial injury; (4) based upon Dr. Fritz's March 17, 2022, report, claimant's request for the total loss/total loss of use of the left index finger and left middle finger is denied; and (5) it is noteworthy that the self-insuring employer accepted and approved claimant's September 28, 2020, C-86 motion, which requested payment of an amputation/scheduled loss award for two-thirds loss of the index and middles fingers. Claimant and the employer appealed.

{¶ 33} 13. On April 8, 2022, the commission denied claimant's and the employer's appeals.

{¶ 34} 14. On April 27, 2022, claimant filed a request for reconsideration.

{¶ 35} 15. On May 13, 2022, the commission denied claimant's request for reconsideration.

{¶ 36} 16. On June 21, 2022, claimant filed a complaint for writ of mandamus, requesting that this court order the commission to grant her request for payment of a total loss/total loss of use, and to enter an order granting such compensation.

Conclusions of Law and Discussion:

{¶ 37} The magistrate recommends that this court deny claimant's request for a writ of mandamus.

{¶ 38} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 39} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any

evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 40} R.C. 4123.57(B) authorizes scheduled compensation to a claimant for the total loss of a body part, such as the total loss of an arm or leg. "Loss" within the meaning of the statute includes not only amputation, but also the loss of use of the affected body part. *State ex rel. Wyrick v. Indus. Comm.*, 138 Ohio St.3d 465, 2014-Ohio-541, ¶ 10, citing *State ex rel. Moorehead v. Indus. Comm.*, 112 Ohio St.3d 27, 2006-Ohio-6364.

{¶ 41} To qualify for compensation under R.C. 4123.57(B), the loss of use need not be absolute if the claimant has "suffered the permanent loss of use of the injured bodily member for all practical intents and purposes." *Id.*, citing *State ex rel. Alcoa Bldg. Prods. v. Indus. Comm.*, 102 Ohio St.3d 341, 2004-Ohio-3166, ¶ 12. However, a claimant may qualify for a total loss of use award under R.C. 4123.57(B) even if the body part retains some residual function. *State ex rel. Varney v. Indus. Comm.*, 143 Ohio St.3d 181, 2014-Ohio-5510, ¶ 16, citing *Alcoa Bldg. Prods.* "[T]he pivotal question is how much function remains." *State ex rel. Kroger Co. v. Johnson*, 128 Ohio St.3d 243, 2011-Ohio-530, ¶ 15. In *Alcoa Bldg. Prods.*, the Supreme Court of Ohio noted that evidence indicated the claimant continued to use what remained of his impaired limb for some minor functions: pushing open a car door, and tucking paperwork between the upper arm and chest; however, these minor residual functions did not preclude a scheduled award. *Id.* at ¶ 6.

{¶ 42} An injured worker claiming loss of use under R.C. 4123.57(B) bears the burden of showing that the loss of use is complete and permanent. *State ex rel. Carter v. Indus. Comm.*, 10th Dist. No. 09AP-30, 2009-Ohio-5547.

{¶ 43} In "Adjudications Before the Ohio Industrial Commission," Memo F3 | Ankylosis of Finger Joints, provides:

> The injured worker is entitled to an award for total loss of use of a finger when the hearing officer finds that the injured worker suffers ankylosis of the proximal interphalangeal

(PIP) joint of a finger. In other words, ankylosis of the joint below the middle phalange is a loss of more than the middle and distal phalanges of the finger.

{¶ 44} R.C. 4123.57(B) provides, in pertinent part:

The loss of the middle, or second, phalange of any finger is considered equal to the loss of two-thirds of the finger.

The loss of more than the middle and distal phalanges of any finger is considered equal to the loss of the whole finger.

{¶ 45} "Res judicata operates to preclude the relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction." *State ex rel. Kroger Co. v. Indus. Comm.*, 80 Ohio St.3d 649, 651 (1998), quoting *Office of Consumers' Counsel v. Pub. Utilities Comm.*, 16 Ohio St.3d 9, 10 (1985). Res judicata applies to administrative proceedings including proceedings before the commission. *State ex rel. Marion Cty. N. Cent. Ohio Rehab. Ctr. v. Indus. Comm.*, 10th Dist. No. 03AP-325, 2004-Ohio-1411, ¶ 29, citing *Jacobs v. Teledyne, Inc.*, 39 Ohio St.3d 168 (1988). In the context of workers' compensation, res judicata bars any change to a final order unless the moving party can satisfy the requirements under R.C. 4123.52 for the exercise of continuing jurisdiction. *See State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454 (1998).

{¶ 46} In the present case, claimant first argues that the commission's denying his motion for total loss of left index and left middle fingers via amputation was an abuse of discretion and not supported by some evidence. Claimant contends that Dr. Rymer, who performed surgery on his fingers multiple times, is the sole physician who can issue a definitive opinion as to the exact location of the amputation and what remained of the proximal phalanges of each finger. Claimant asserts that the amputation diagram form completed by Dr. Rymer depicts a loss of amputation of more than the middle and distal phalanges of both fingers. Claimant argues that the independent examiner, Dr. Kennington, concurs with Dr. Rymer's opinion, and both Drs. Kennington and Rymer were provided the definitions for total loss of a finger in their questionnaires. Claimant contends that the only contrary medical evidence on this issue is the addendum report of

Dr. Fritz, who was not provided the definition for a total loss of a finger and offers only a bare conclusion without citation to any medical evidence.

{¶ 47} The commission first raises the argument that claimant's request for total loss of his middle and index fingers is res judicata because the self-insured employer granted claimant's prior September 28, 2020, request for two-thirds loss of the index and middle fingers on October 14, 2020, and claimant did not object to or appeal the decision of the employer. The commission points out that the motion for total loss of the same two fingers filed 11 months later was supported by the same evidence previously on file with the Bureau of Workers Compensation, with the exception of Dr. Fritz's October 20, 2021, report. The commission claims that *State ex rel. Croston v. Alliance Castings Co.*, 10th Dist. No. 15AP-937, 2017-Ohio-6900, and *State ex rel. Casey v. Indus. Comm.*, 10th Dist. No. 20AP-247, 2022-Ohio-532, apply to preclude recovery in the present case based on res judicata.

{¶ 48} Although the SHO did not explicitly cite res judicata as a ground for denying claimant's request, after denying the request based upon Dr. Fritz's March 17, 2022, addendum, the SHO noted that the self-insuring employer accepted and approved claimant's September 28, 2020, C-86 motion, which requested payment of an amputation/scheduled loss award for two-thirds loss of the index and middle fingers. The SHO seems to implicate the doctrine of res judicata in making this finding. Insofar as the initial award was for a two-thirds loss of the middle and index fingers, and claimant failed to contest this award, any subsequent finding that claimant suffered a total loss of the same middle and index fingers would necessarily conflict with the initial award. Although claimant acknowledges the initial award for two-thirds loss in his November 22, 2021, request and attempts to reconcile the two requests by noting that any award for total loss must be reduced by the prior award paid for two-thirds loss, claimant presents no authority for the proposition that a worker may receive a final award for two-thirds loss of a finger and then subsequently file another claim for the total loss of the same finger without any intervening change in circumstances.

{¶ 49} However, the SHO never made a specific finding of res judicata. Notwithstanding the possible application of res judicata by the SHO, claimant's mandamus

action fails on the merits. Claimant's first argument is essentially a question of credibility and persuasiveness. The SHO found Dr. Fritz more credible and persuasive than Drs. Rymer and Kennington. Claimant raises the assertion that because Dr. Rymer performed surgery on claimant multiple times, he is the only physician who can provide the actual amputation locations. However, Dr. Fritz examined claimant in-person twice, reviewed other medical records in the file, and accepted the findings of the other examining physicians, including Drs. Rymer and Kennington. Although claimant also claims that only Drs. Rymer and Kennington were provided with definitions for total loss of fingers in their questionnaires, there is nothing in the record to suggest that Dr. Fritz's opinion was not based upon the correct definition of total loss. There is also nothing in the record that suggests Dr. Fritz was under a mistaken impression as to how much of claimant's fingers had been amputated. Furthermore, although claimant asserts in his brief that the amputation diagram form depicts a loss by amputation of more than the middle and distal phalanges of both fingers, the record does not support the claim. Dr. Rymer indicated that he disarticulated the left index finger at the PIP joint, and the amputation diagram completed by Dr. Rymer shows a line drawn directly through the PIP joint of the index finger, both of which demonstrate that claimant did not lose more than the middle phalange of his index finger. Dr. Kennington also found in his February 21, 2022, report that claimant's index finger is amputated at the PIP joint level. Yet, Dr. Fritz opined in his questionnaire that claimant suffered a loss of more than the middle phalange of the index finger. This inconsistency would be sufficient to render Dr. Rymer's opinion unreliable, while also raising a credibility issue with his opinion regarding the amputation site of the middle finger, which conflicted with Dr. Kennington's February 21, 2022, opinion that claimant's left middle finger is amputated at the PIP joint level. As for Dr. Kennington's report, it also suffers from an inconsistency sufficient to render it unreliable. Dr. Kennington indicated that claimant's PIP joints in his index and middle fingers suffered from ankylosis, which is inconsistent with the fact that the middle phalanges of both the index and middles fingers were completely removed.

{¶ 50} Regardless of the inconsistencies in Drs. Rymer's and Kennington's reports, the argument that Dr. Rymer should be the only physician competent to opine as to the

extent of amputation is unpersuasive when his records were reviewed by Dr. Fritz, and Dr. Fritz physically examined claimant twice. With regard to reliance upon Dr. Fritz's addendum, Dr. Fritz found claimant has an amputation through the PIP joint of the left index finger and an amputation of the PIP joint of the left middle finger. Dr. Fritz reviewed and accepted the findings in Dr. Rymer's operative notes and amputation diagram. Dr. Rymer indicated that he disarticulated the middle finger at the PIP level, transected the head of the proximal phalange off on the left middle finger, and disarticulated the index finger at the PIP joint. The amputation diagram form completed by Dr. Rymer shows a line drawn through approximately the middle of the head of the proximal phalange of the middle finger and a line draw directly through the PIP joint of the index finger.

{¶ 51} The issue before the SHO was whether Dr. Fritz's findings constituted a loss of "more than" the middle and distal phalanges. There is no statutory definition of "more than." However, some guidance can be gleaned from our decision in *State ex rel. Green Tokai v. Indus. Comm.*, 10th Dist. No. 06AP-642, 2007-Ohio-4688. In *Green Tokai*, the claimant sustained amputations of the tips of right index, middle, and ring fingers. Claimant moved for scheduled-loss compensation pursuant to R.C. 4123.57(B). A doctor completed an amputation diagram and marked the three amputation sites by drawing lines across the distal phalanges of the index, middle, and ring finger bones. The SHO found that the claimant suffered a one-third loss by way of amputation, of his right index, middle, and ring fingers, noting that the claimant's loss by way of amputation was sufficiently near the joint of each finger to constitute a loss of the distal phalange of each finger. In mandamus, a magistrate of this court found there was no evidence upon which the commission could rely to support a finding that the claimant sustained the loss of any distal phalange, explaining that the lines drawn across the distal phalanges on the diagram are clearly not at or near the DIP joints of those phalanges. On objections by the commission, the commission disputed that there was no evidence upon which the commission could rely to support a finding that the claimant sustained the loss of the distal phalange of the middle and ring fingers, but agreed there was no evidence to support a loss of the distal phalange of the index finger, as the line drawn across that distal phalange of the index finger on the diagram is not near the DIP joint. Relying upon *State ex rel. Kabealo v. Indus. Comm.*, 10th

Dist. No. 88AP-33 (Mar. 8, 1990), this court found that, under the statute, the loss of the distal phalange does not mean partial loss. Rather, it means severance near the joint, and the commission has discretion to determine whether an amputation is "near the joint" for purposes of R.C. 4123.57(B). This court found that the word "near" is an imprecise word used to describe proximity, and it would be inappropriate for this court to select a specific distance that would sufficiently constitute "near the joint," for purposes of determining whether a loss has occurred under R.C. 4123.57(B). With regard to the index finger, this court noted that the commission's concession is reasonable considering the line on the amputation diagram form shows approximately one-half severance of the distal phalange on that finger. In that regard, a severance of one-half of the distal phalange reasonably could not be considered "near the joint," as that point is equidistant between the distal tip of the finger and the DIP joint. As to the distal phalanges of claimant's second and third fingers, this court found that the point of severance on these phalanges could reasonably be considered "near the joint," as the markings on the amputation diagram form show amputations clearly beyond the halfway points on these phalanges. Therefore, this court found, the amputation diagram form constituted some evidence upon which the commission could rely to support an award of compensation, and the commission did not abuse its discretion in determining that claimant has sustained a loss of the distal phalange of his middle and ring fingers on his right hand.

{¶ 52} Here, the amputation diagram completed by Dr. Rymer shows a line drawn through the middle of the head of the proximal phalange of the middle finger and a line draw through the PIP joint of the index finger. In Dr. Fritz's March 17, 2022, addendum, which the commission relied upon, Dr. Fritz indicated that claimant had a left index finger amputation through the PIP joint and left middle finger amputation at the PIP joint, and claimant still has one-third of the fingers remaining in both index and middle fingers. Applying *Green Tokai* to the present case, it was within the discretion of the commission to determine that, because both the index and middle fingers had all or nearly all of the proximal phalange intact, claimant did not suffer a total loss of his index and middle fingers. Based on the evidence, the commission could have concluded that claimant did not lose more than the middle and distal phalanges because the index finger was amputated at

the PIP joint, and the middle finger was amputated at the head of the proximal phalange. The commission could have determined that the severances were both near enough to the PIP joint that they did not constitute a loss of "more than" the middle phalanges. Stated another way, the amputations also did not result in a loss of the proximal phalange, as the severances occurred at or near the PIP joint. Resultingly, claimant suffered only a two-thirds loss of both fingers. Therefore, the magistrate finds that claimant's arguments are not persuasive that Dr. Fritz's opinion was defective and could not constitute some evidence or that it was an abuse of discretion to find Dr. Fritz more credible than Drs. Rymer and Kennington.

{¶ 53} The magistrate addresses claimant's second and third arguments together. Claimant's second argument is that the commission's order denying an award for a scheduled loss of use of the left middle and left index fingers was an abuse of discretion, contrary to law, and not supported by some evidence. Claimant points out that all of the doctors agree that the middle and distal phalanges of claimant's left index and left middle fingers have been completely removed, and there is no PIP in existence between the proximal phalange and middle phalange of either finger. Claimant analogizes his circumstances with an award given for total loss of use of a finger when there is ankyloses of the joint below the middle phalange, resulting in a loss of more than the middle and distal phalanges, and asserts there is no reason why an amputation related to removal of the PIP joint should be treated any differently than if the joint was ankylosed. Claimant urges that whether the joint is non-functional because it is ankylosed or because it no longer exists (due to amputation, in this case), the result should be the same; i.e., a total loss of use of more than the middle and distal phalanges of the fingers.

{¶ 54} Claimant's third argument is that the commission's order denying an award for total loss of use of the left index and left middle fingers based upon the March 17, 2022, addendum report of Dr. Fritz was an abuse of discretion. Claimant asserts that Dr. Fritz's addendum report is invalid because it is inconsistent with and contradicted by his October 20, 2021, report, because in his October 2021 report, Dr. Fritz stated claimant could not do any work that involved two-jaw pinching for fine manipulation or holding onto objects in a pinching mechanism, while he stated in his addendum report that his left index

and middle fingers are functional, and he has some degree of ability to pinch against them. Claimant also contends that Dr. Fritz's addendum points to no function of the index and middle fingers other than an imprecise ability to pinch.

{¶ 55} Claimant is correct that all of the doctors agree that the middle and distal phalanges of claimant's left index and left middle fingers have been completely removed, and there is no PIP in existence between the proximal phalange and middle phalange of either finger. Although claimant attempts to analogize a total loss of use of a finger when there is ankylosis of the joint below the middle phalange and an amputation related to removal of the PIP joint, there is no need to resort to analogy, and the statutory law controls. R.C. 4123.57(B) provides that the loss of the middle phalange of any finger is considered equal to the loss of two-thirds of the finger, and the loss of more than the middle and distal phalanges of any finger is considered equal to the loss of the whole finger. Thus, the only pertinent question for the commission was whether claimant lost the use of more than the middle and distal phalanges of his index and middle fingers. On this point, Dr. Fritz found in his addendum that claimant does not have total loss of use of his left index and middle fingers, pointing out that claimant still has one third of both fingers remaining, the remaining one third of his fingers are functional, and he has some degree of ability to pinch against them. This clearly constitutes some evidence to support the SHO's determination. Although claimant contends that Dr. Fritz's addendum is invalid because it is inconsistent with his report five months earlier, the magistrate disagrees. That Dr. Fritz indicated in October 2021 that claimant could not engage in employment that required him to two-jaw pinch for fine manipulation or hold onto objects in a pinching mechanism with his left middle or index fingers, should not prohibit him from issuing an updated opinion in the addendum five months later. Dr. Fritz was aware of his prior reports and acknowledged them in his addendum. He also reviewed the February 21, 2022, IME report of Dr. Kennington in composing his addendum. Furthermore, Dr. Rymer noted in his operative report that he left enough of claimant's index finger so that claimant would be able to pinch, which lends further credibility to Dr. Fritz's report. Therefore, the commission's order denying claimant's award for a scheduled loss of use of the left middle

and left index fingers was not an abuse of discretion, and Dr. Fritz's addendum was some evidence to support the order.

{¶ 56} Accordingly, it is the magistrate's decision that this court should deny claimant's petition for a writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the courts adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.